# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN IVARONE<br>240 Hickory Corner Rd.<br>East Windsor, NJ 08520<br><br>Plaintiff,<br><br>v.<br><br>AOP OPERATING COMPANY, LLC.<br>d/b/a PRINCETON VOLKSWAGEN<br>959 State Road, Route 206<br>Princeton, NJ 08540<br><br>Defendant. | CIVIL ACTION<br><br>No. 18-6591<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, John Ivarone, (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by AOP Operating Company, LLC. d/b/a Princeton Volkswagen (hereinafter referred to as "Defendant" unless otherwise indicated) for violations of the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*) and the New Jersey Law Against Discrimination ("LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### II. Jurisdiction and Venue

2. This Court may properly maintain jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice,

satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co v. State of Washington</u>, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff exhausted his administrative remedies because he timely filed Charges with the Equal Employment Opportunity Commission (EEOC) and now files the instant lawsuit after sixty (60) days of filing his Charge with the EEOC.

### III. Parties

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is adult who resides at the above-captioned address.

8. Defendant is a business entity that owns and operates a car dealership in Princeton, NJ.

9. Defendant has and continues to employ at least twenty (20) employees in both the current and preceding year.

2

AOP00349

10. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV. Factual Background

11. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12. Plaintiff is an 80-year-old, adult, male individual.

13. Plaintiff worked for Defendant for fourteen (14) years from November 2003 through December 11, 2017.

14. During his employment, Plaintiff worked as a car salesman (selling both new and used vehicles) and performed his job very well.

15. Over the course of his tenure, he received numerous accolades for positive sales performance, including from management, outside sales recognition within the industry, and past/current clients.

16. Due to Plaintiff's good reputation as a car salesman and his sales ability, he built up his own customer base who were repeat buyers at Defendant's dealership over the years and with whom Plaintiff generated substantial referrals; (solely by way of example, his satisfied customers would send letters to the dealership to share their review of their experience with Plaintiff, such as "John was top notch, he is almost perfect, you are lucky to have an employee like him.").

17. At all relevant times, Plaintiff was supervised by Joseph Solano (General Manager), George Stamos (Used Car Manager), and Steven Cotter (New Car Manager).

3

AOP00350

18. However, it was not until approximately the last year of Plaintiff's employment that he began being supervised by Steven Cotter.

19. Towards the end of Plaintiff's employment with Defendant, Plaintiff was experiencing disparate treatment by Mr. Cotter in comparison to his younger counter parts.

20. For illustrative purposes only, Mr. Cotter was intentionally diverting internet and in-house sales leads to the substantially younger employees (this included but was not limited to, Matt Ruko and Zakaria "Zak" Asad – both substantially younger than plaintiff).

21. Defendant's dealership had previously utilized an objective and fair method for administering internet sales leads amongst the salesman on the floor; this involved a Business Development Group performing the distribution equitably among all salesman and inputting the sales leads directly into each sales person's customer base electronically.

22. However, shortly after his arrival, Mr. Cotter stopped the objective and fair administration of internet sales leads and began giving them out within his sole discretion, and to the substantially younger employees.

23. When the prior system for administering internet sales leads was in place, *whereby* Mr. Cotter did not have full discretion, the Dealership would receive approximately 40-60 sales leads in any given month (which were distributed equally amongst the sales men). Once Mr. Cotter had control over distributing sales leads, Plaintiff would get 1-2 per month, and he noticed it was only if Mr. Cotter's younger employees were too busy and could not handle more leads.

24. Although Plaintiff had no meaningful incidents or issues with management before Mr. Cotter came on board, Defendant's management had now created a very uncomfortable environment for Plaintiff to work in, including but not limited George Stamos (Used Car

Manager) making comments stating that he would put Plaintiff on a truck to Florida, and Mr. Cotter saying "sounds like a good idea to me" (as if they wanted Plaintiff to retire).

25. After having been singled out in comparison to his younger peers, and subjected to these types of comments as aforementioned, on or about December 11, 2017, Mr. Cotter informed Plaintiff that he was being terminated for failure to meet sales quota.

26. During the terminating meeting, Plaintiff specifically informed Mr. Cotter that he wasn't getting leads equally as the other individuals and was then told by Mr. Cotter that he "did not have to give out leads equally."

27. However, Plaintiff's sales quotas were not poor, particularly based on a look back of each month's sales quota for 2017 (the last full year of his employment) and 2016 (the prior year).[1]

28. The reasons for Plaintiff's termination are demonstrably false, as Plaintiff was one of the highest (if not the highest) net and gross performers of his sales group.

29. A review of Defendant's total gross profits for sales employees for periods shortly preceding his termination show that he did better than at least two (2) of his substantially younger peers (and whom Mr. Cotter tended to favor). For example, for September 2017, Plaintiff grossed $6,030.00, while Zak Asad grossed $4,884.00 and Matt Ruko grossed only a mere $361.00.

30. Further, one's eligibility for sales bonuses are based upon certain targets (for example: a tiered system of selling 8, 10, or 12 cars per month), and Plaintiff had received his most recent bonus. As this was quite a feat to accomplish (as not all sales persons did), Plaintiff

---

[1] Plaintiff highlights 2016 and 2017, as those were the most recent years of his employment; however, Plaintiff did historically well with his sales for the entire period of his tenure at Defendant dealership.

5

was quite surprised to hear that he was being terminated for his sales performance (as bonuses are a *reward* for good sales performance).

31. Plaintiff worked for Defendant for a period fourteen (14) years, during which he was a good performer and employee for Defendant, without any admonishments for poor sales.

32. Even before Plaintiff had the opportunity to leave the premises on the day of his termination, Defendant had already hired a significantly younger individual, approximately in his early 20's, as Plaintiff's replacement, who was actually sitting at Plaintiff's desk as the new hire when Plaintiff departed.

33. Plaintiff believes and therefore avers that he was terminated because of his advanced age.

### Count I
### Violations of the Age Discrimination in Employment Act ("ADEA")
(Wrongful Termination-Discrimination; Hostile Work Environment)

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff believes and avers herein that his age was a determinative factor in his termination.

36. These actions as aforesaid constitute unlawful retaliation under the ADEA.

### Count II
### Violations of the New Jersey Law Against Discrimination ("NJLAD")
(Wrongful Termination – Discrimination; Hostile Work Environment)

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Count I as they constitute violations of the NJLAD.

6

AOP00353

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded liquidated and punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate (including emotional distress / pain and suffering damages);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

AOP00354

G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Christine E. Burke Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 13, 2018

8

AOP00355