**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE STAMOS,<br><br>Plaintiff,<br><br>v.<br><br>AOP OPERATING COMPANY, LLP, *et al.*,<br><br>Defendants. | Civil Action No. 20-1676 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants AoP Operating Company, LLP ("AoP"), Joseph Solano ("Solano"), and Jonathan Sobel's ("Sobel") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 30.) Plaintiff George Stamos ("Stamos") opposed (ECF No. 32), and Defendants replied (ECF No. 36). Stamos then filed a Motion for Leave to File a Sur-Reply Memorandum (ECF No. 37) and Defendants responded (ECF No. 38).[1] The Court has

---

[1] Stamos requests leave to file a sur-reply because, among other reasons, Defendants' reply brief encourages the Court to disregard Stamos's affidavit under the "sham affidavit" standard and misstates the law in doing so. (ECF No. 37-1.) Here, Defendants do not attempt to argue that the Court should disregard Stamos's affidavit due to this doctrine, but rather, because they contend that the affidavit does not raise a genuine dispute of material fact. (*See* Defs.' Reply Br. 4-6, ECF No. 36.) As for Stamos's secondary argument that he had not been confronted with certain claims at his deposition, "[a] [sur-reply] is not meant to be used as a vehicle for providing the [c]ourt with arguments that could have been included in the [] opposition brief." *See Zahl v. Loc. 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010) (citation omitted). The Court, accordingly, will not consider arguments that Stamos now attempts to make in a sur-reply and denies his Motion.

carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion.

## I.     BACKGROUND

Stamos brings this action against his former employer, AoP, as well as Sobel and Solano, alleging discriminatory discharge from his employment.[2] Stamos was hired as a sales manager by Volkswagen of Princeton in 1998. (Compl. 4 ¶ 14, ECF No. 1.) In January 2016, Sobel formed AoP for the purpose of acquiring the Volkswagen of Princeton and Audi of Princeton dealerships. (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 1, ECF No. 30-2.) AoP successfully acquired the two dealerships from Empire Holdings, LLC ("Empire") in a single transaction, following which AoP hired most of Empire's previous employees, including Stamos. (*Id.* ¶¶ 2-5; Defs.' Moving Br., Ex. A, at Tr. 13:4-16:20 ("Stamos Dep."), ECF No. 30-4.) Stamos, then age 58, became the Sales Manager for Pre-Owned Vehicles—the same position he previously held at Empire. (DSUMF ¶¶ 5, 10; Defs.' Moving Br., Stamos Dep. Tr. 16:5-20, 21:4-7.) Stamos's responsibilities included the purchasing, marketing, and sales of pre-owned vehicles (including pricing, certifying, and appraising vehicles), as well as motivating his sales team and maintaining customer relationships. (DSUMF ¶¶ 22-23.)

In July 2016, Sobel hired Solano (then age 57) to serve as the General Manager of both dealerships. (*Id.* ¶¶ 7-8; Defs.' Moving Br., Ex. B, at Tr. 18:17-21:3 ("Solano Dep."), ECF No. 30-5.) Ultimately, Solano decided to terminate Stamos in July 2019, when Stamos was 60 years old. (DSUMF ¶¶ 86-90.) Stamos alleges that at the time of his firing, he had been the Pre-Owned

---

[2] After the conclusion of discovery, Stamos conceded Sobel should be dismissed from this case. (*See* Pl.'s Opp'n Br. 1 n.1, ECF No. 32 ("The Complaint also names the sole owner, [Sobel], as a Defendant. However, discovery has revealed that [Solano] was the sole and final decision-maker, and it is appropriate that [Sobel] be dismissed from this case. That is the only relief to which any Defendant is entitled.").) Accordingly, the Court dismisses Sobel from this action.

Sales Manager in the Volkswagen of Princeton dealership for twenty-one years. (Pl.'s Opp'n Br. 1, ECF No. 32.)

The parties dispute the reason as to why Stamos was terminated. Defendants contend that Stamos's poor performance resulted in his termination. (Defs.' Moving Br. 22, ECF No. 30-1.) Stamos, on the other hand, claims he was terminated based on his age, given that Solano temporarily replaced Stamos first with a forty-year-old man, and then with someone in his late twenties or early thirties. (Pl.'s Opp'n Br. 1.)

On February 18, 2020, Stamos filed the instant action. (*See generally* Compl.) The Complaint alleges causes of action against all Defendants under New Jersey's Law Against Discrimination, N.J. Stat. Ann. §§ 10:5–1, *et seq.* ("NJLAD") (Count I) and against AoP under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA") (Count II). (*Id.*) The parties proceeded to discovery, which concluded on February 1, 2022. (ECF No. 26.) Thereafter, Defendants filed this Motion for Summary Judgment. (ECF No. 30.) Stamos opposed (ECF No. 32) and Defendants replied (ECF No. 36).

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving

party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III. DISCUSSION

Stamos alleges several claims against Defendants based on discriminatory discharge, stemming from what he asserts was "indicia of age bias because Defendants replaced him with a person in his forties [Johan Emanuel] and then by a person in his thirties [Diego Baez]."[3] (Pl.'s Opp'n Br. 10.)

Defendants dispute Stamos's claims. Notably, Defendants concede, for purposes of this Motion, that Stamos can establish a prima facie case of discrimination given that the evidentiary burden to do so is "rather modest." (Defs.' Moving Br. 19-20 (quoting *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005).) According to them, however, they fired Stamos for legitimate, nondiscriminatory reasons, and Stamos fails to present any evidence that those reasons were a pretext for discrimination. (Defs.' Moving Br. 1.)

### A. Age Discrimination

#### 1. Statutory Framework.

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the NJLAD provides that it is unlawful "for an employer to . . . discharge any individual . . . because of such individual's age." N.J. Stat. Ann. § 10:5–12; *see also id.* § 10:5–4 (recognizing opportunity to obtain employment "without discrimination because of . . . age" as a civil right). "Age

---

[3] Stamos briefly makes vague allegations of hostile work environment and retaliation. (*See* Compl. ¶ 48 ("Despite such knowledge [of a pattern of conduct], Defendants failed to adequately investigate, discipline, or discharges its agents, servants, and representatives who discriminated and retaliated against Plaintiff and created a hostile work environment.") Stamos, however, then abandons these potential claims. (*See* PRSUMF ¶ 16 ("It is uncontested that [Stamos] was subjected to an adverse employment action (termination) by a supervisor (Solano) and has not made a claim for hostile work environment . . . in this case . . . . [Stamos's] claims stem exclusively from the termination of his employment.").) In any event, Stamos does not plead specific facts regarding either of these two claims. (*See generally* Compl.)

5

discrimination claims under the ADEA and [NJ]LAD are governed by the same standards and allocation of burdens of proof." *Fowler v. AT&T Servs., Inc.*, No. 18-667, 2020 WL 2839461, at *5 (D.N.J. May 31, 2020), *aff'd sub nom. Fowler v. AT&T, Inc.*, 19 F.4th 292 (3d Cir. 2021) (quoting *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996)).

In determining whether a plaintiff has stated a viable claim for discrimination when only circumstantial evidence exists, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas*, 411 U.S. at 802-03; *see also Viscik v. Fowler Equip. Co., Inc.*, 800 A.2d 826, 833 (N.J. 2002) ("Specifically, our courts have adopted the burden-shifting framework articulated in *McDonnell Douglas* . . . to prove disparate treatment under [NJ]LAD."). The *McDonnell Douglas* framework requires as follows: (1) a plaintiff first must make a prima facie case of discrimination, (2) the burden then shifts to the defendant, who must articulate "legitimate," "nondiscriminatory reasons for its actions," and if defendants satisfy that burden, (3) the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Tourtellotte*, 636 F. App'x at 842.

To prevail on an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-43 (2000)). Direct evidence is evidence which, "if believed, would prove the existence of the fact [in issue] *without inference or presumption.*" *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (alteration and emphasis in original) (citation and internal quotation marks omitted). Indirect evidence is such that "the trier of fact must *infer* the

discrimination on the basis of age from an employer's remarks." *Id.* (emphasis in original) (citation omitted).

As to the similar framework under the NJLAD, in general, to establish a prima facie case for unlawful termination a plaintiff must demonstrate that he or she: (1) belongs to a protected class, (2) was qualified for the position held, (3) was terminated despite adequate qualifications, and (4) a logical basis on which to find that the employer's decision to terminate the plaintiff was affected significantly by the plaintiff's age. *Arenas v. L'Oreal USA Prod., Inc.*, 790 F. Supp. 2d 230, 236 (D.N.J. 2011), *aff'd*, 461 F. App'x 131 (3d Cir. 2012).

Regarding the last step of the *McDonnell Douglas* framework, a plaintiff must submit evidence which "casts sufficient doubt upon each of the legitimate reasons" that defendants assert or "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). To make this showing, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Tourtellotte*, 636 F. App'x at 842 (internal quotations and citations omitted).

Here, the record does not reflect, and Stamos does not argue, that there exists direct evidence of age discrimination. (PRSUMF ¶ 93 ("[Stamos] did not suffer and does not allege that he suffered any discrimination until he was terminated, and [instead alleges] that the sole act of discrimination was the termination of his employment and his replacement with two (serially) significantly younger employees. . . . "); Defs.' Moving Br., Stamos Dep. Tr. 32:12-33:19 (admitting that no one ever made any age-related remarks to Stamos during the course of his employment).) Stamos must, therefore, establish a prima facie case of discrimination through

7

indirect evidence under the *McDonnell Douglas* framework. *See Gray v. York Newspapers*, 957 F.2d 1070, 1078 (3d Cir. 1992). Because Defendants have already conceded a prima facie case of discrimination, the Court turns to analyzing whether Defendants have been able to articulate a legitimate, nondiscriminatory reason for terminating Stamos under the *McDonnell Douglas* framework, and whether Stamos is able to show that these reasons are pretextual. *See Hooker v. Novo Nordisk, Inc.*, No. 16-4562, 2020 WL 526165, at *5 (D.N.J. Jan. 31, 2020), *aff'd*, No. 20-1427, 2021 WL 3087786 (3d Cir. July 22, 2021).

### 2. Summary Judgment Must Be Granted in Favor of Defendants on Both Counts.

Defendants advance several reasons for terminating Stamos that boil down to Stamos's poor performance. (Defs.' Moving Br. 22.) For the reasons explained further below, the Court finds that Defendants meet their burden of showing legitimate, nondiscriminatory reasons for Stamos's termination. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (stating that the employer's burden of showing a nondiscriminatory reason is "relatively light"); *Venegas v. Cosm. Essence, L.L.C.*, A-4634-13T1, 2015 WL 588403, at *5 (N.J. Super. Ct. App. Div. Feb. 13, 2015). Although Stamos disagrees with Defendants' proffered reasons for terminating him, he puts forth no evidence or sound argument as to why those reasons are pretextual. Indeed, the Court finds that Stamos's conjecture about younger replacements alone fails to raise a genuine dispute of fact. Because that is all Stamos can offer, even with the benefit of complete discovery, the Court finds summary judgment in favor of Defendants appropriate.

Solano was the employer's key decisionmaker and offers several explanations for Stamos's termination. When asked why he decided to terminate Stamos, Solano testified as follows:

> I felt that George was difficult to communicate with. I thought that he didn't exhibit leadership skills. I thought someone in that position should have been communicative, be able to communicate. And I

> thought that he had the intelligence to go in this new direction but I didn't feel—I don't believe he had the willingness.

(Defs.' Moving Br., Solano Dep. Tr. 79:8-15.) Solano believed that Stamos's "unwillingness to support innovation or innovative ideas had an overall effect" on AoP's business. (*Id.* at 85:22-86:3.) Solano further observed that Stamos did not engage as well with customers as other managers did. (*Id.* at 57:10-58:2.) In particular, Defendants claim to have terminated Stamos for the following legitimate, nondiscriminatory reasons related to his poor performance.

*First*, Stamos refused to embrace new technology to acquire, appraise, and market cars. The parties expend much ink on Stamos's process for selling pre-owned vehicles.[4] According to Solano, Solano was informed in early 2019 that the Honda of Princeton dealership, which Sobel also owned, was achieving great success with acquiring and appraising pre-owned vehicles for resale. (Defs.' Moving Br., Solano Dep. 48:15-49:4.) Essentially, when Michael Clites ("Clites") began to work at the Honda dealership as a used car manager, Honda's business and profitability soared. (*Id.*) Clites used an inventory organization software tool known as vAuto to receive a live-market view of the used car market, allowing users to more efficiently and accurately appraise, acquire, and market pre-owned vehicles. (Defs.' Moving Br., Ex. N, at Tr. 8:5-12:8 ("Clites Dep."), ECF No. 30-17.) That Spring, Solano retained Clites on behalf of AoP to assess how its managers were making vehicle acquisition decisions. (Defs.' Moving Br., Solano Dep. Tr. 48:15-67:16.) Solano claims to have informed Stamos and other managers that Clites was coming to help them learn about vAuto's capabilities. (*Id.* at 65:9-20, 66:2-67:4.) While Stamos met at least once with Clites, Stamos refused to interact on other occasions, telling Clites he did not need

---

[4] Defendants first assert that Stamos performed poorly because the strategies used by Plaintiff in acquiring primarily Volkswagen vehicles that could be certified as pre-owned were no longer viable because Stamos did not use live market data. (Defs.' Moving Br. 11-12.) Given that Defendants' next stated reason for termination related to Stamos's poor performance (regarding the newer vAuto technology) raises the same point, the Court considers these arguments together.

9

his help. (Defs.' Moving Br., Solano Dep. Tr. 65:6-67:4, 69:8-12; Clites Dep. Tr. 34:15-36:22.) Clites told Richard Ortiz ("Ortiz"), who was the direct manager and a general sales manager at Volkswagen of Princeton, as well as Solano that Stamos refused to meet with him. (Clites Dep. Tr. 37:16-38:3.) Ortiz also stated that Stamos made his lack of interest in learning vAuto "apparent." (Defs.' Moving Br., Ex. J, at Tr. 130:20-131:8 ("Ortiz Dep."), ECF No. 30-13.) And Solano confirmed that Clites, as well as Ortiz and another salesperson, Matthew Kassin ("Kassin"), told him that Stamos was "not on board with this process." (Defs.' Moving Br., Solano Dep. Tr. 70:10-16.)

Stamos presents no evidence apart from his own affidavit and deposition testimony to counter Defendants' allegations of his refusal to participate in vAuto training, which Defendants assert was part of Stamos's poor performance. Stamos asserts that he utilized all available technologies, including vAuto, and that contrary testimony of Solano and Ortiz related to this general point "is false." (Pl.'s Opp'n Br., Ex. F, Stamos Aff. ¶¶ 34-42, ECF No. 32-8.) He further contends that he was never instructed to undergo training by Clites and that he was never asked to attend any meeting concerning the use of vAuto. (*Id.* ¶¶ 43-47.) Yet "[b]road, unsupported denials are insufficient to establish disputes of fact in opposition to a summary judgment motion." *Retter v. Ga. Gulf Corp.*, 755 F. Supp 637, 640 (D.N.J. 1991). The Court finds there is no dispute of material fact as to this reason for terminating Stamos.

*Second*, Defendants contend that Stamos engaged in inappropriate communications with the sales team and customers, and that this behavior led to his firing. For instance, in 2017, Alan Geller ("Geller"), a salesperson at AoP whose wife is Chinese, sent an e-mail communication to Solano explaining his discomfort over Stamos's references to Asian customers who came into the dealership as Geller's "relatives." (Defs.' Moving Br., Ex. K, at 1-2 ("Geller E-Mail Message"), ECF No. 30-14.) Geller also complained to Solano that on multiple occasions, Stamos called him

"weak." (*Id.* at 2.) Ortiz confirmed that he heard Stamos make demeaning statements to Geller. (Defs.' Moving Br., Ortiz Dep. Tr. 8:4-12, 37:10-39:4.) Geller further complained, among other points in his message to Solano, that "unlike Abe, George NEVER comes out of his office to help me close a customer . . . . In fact, I can't see how without Abe around any new salesperson could get up and running at the dealership if they had to rely on George as their manager." (Geller E-Mail Message 1.)

Similarly, Kassin and Ortiz had their share of grievances against Stamos. Kassin complained to Solano during the first two or three weeks of his employment about Stamos's refusal to help a pair of customers at AoP. (Pl.'s Opp'n Br., Ex. D, at Tr. 44:1-45:20 ("Kassin Dep."), ECF No. 32-6.) Kassin further testified to Stamos's poor managerial style, explaining that Stamos "not only [offered] no guidance but was actually belligerent" because he "wouldn't help [Kassin]." (Defs.' Moving Br., Ex. L, Kassin Dep. Tr. 20:1-22, ECF No. 30-15.) So much so that Kassin claimed to Defendants that Stamos's behavior negatively impacted Kassin's ability to close deals. (*Id.* at 32:7-22, 51:3-24.) Separately, Ortiz opined that he "worked there with [Stamos] for two years and never saw him get up and speak to a customer." (Defs.' Moving Br., Ortiz Dep. 43:24-44:23.) Kassin and Ortiz also noted that Stamos would call customers of Indian descent by the generic, common surnames "Patel" or "Kumar" when they walked in—out of earshot of the customers—despite Stamos not knowing their actual names. (*Id.* at 77:18-80:5; Defs.' Moving Br., Kassin Dep. Tr. 47:2-49:11.)

Solano confirmed that he received some of these complaints, among others. (Pl.'s Opp'n Br., Ex. B, Solano Dep. Tr. 139:22-140:3, ECF No. 32-3) (explaining that Clites, Kassin, Geller, and employee Rose Diaz ("Diaz") all made complaints to him about Stamos).) Indeed, "[a]pproximately once per month during [Stamos]'s tenure at AoP," Diaz "verbally complained to

[Solano] that [Stamos] was unresponsive to my email correspondence." (Pl.'s Opp'n Br., Ex. G, Diaz's Dep. Resps. ¶ 43, ECF No. 32-9.)

Stamos offers a mixture of concessions and denials in response to Defendants' evidence of legitimate reasons for termination. He concedes that he called Geller a "weak salesperson" and that he was called into Solano's office to apologize for doing so. (Defs.' Moving Br., Stamos Dep. Tr. 42:3-7.) He also concedes that he referred to some Indian customers as "Patel" or "Kumar" but justified his doing so on the basis that the majority of their customers shared this last name. (*Id.* at 40:1-42:2.) And Stamos asserts that he provided assistance whenever requested or if he observed that a salesperson was experiencing difficulty. (Stamos Aff. ¶ 20.) As for the rest of the adverse comments, Stamos's main rejoinder is that "[t]here was never a time after [Stamos] apologized [to Geller] that either [Geller] or anyone else told [Stamos] that he was not approachable or did not communicate well . . . no one, including [Solano], ever told [Stamos] that his performance was in any way inadequate or unacceptable." (PRSUMF ¶ 25; *see also* Stamos Aff. ¶¶ 28-33.) And thus, any "contrary testimony" regarding his deficient performance "is false." (Stamos Aff. ¶¶ 28-35.)

Stamos's rebuttal theory seems to be, in part, that because, apart from the Geller incident, no one informed him of his poor performance before firing him, the reasons for firing him are impliedly illegitimate. The Court finds this theory unavailing. The Court's well-defined role is to "sit in judgment" of the plaintiff's "alleged discrimination, not of [the defendant's] managerial competence or the clarity of its communications with its employees." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 538-39 (3d Cir. 2006). Again, the Court finds that Stamos's blanket denials fail to raise any dispute of fact as to why Defendants terminated him. *See Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230 (3d Cir. 2013) (plaintiff must offer evidence that contradicts defendant's "core facts" for its adverse decision).

Stamos's primary evidence of pretext, however, is his opinion that he and others were replaced with younger workers at lower salaries. When asked what the factual basis was for his contention that age had anything to do with his termination, Stamos stated: "The company, I don't know who made the decisions, you know, management[,] made the decision to replace or hire people with younger people so they don't have to pay my salary." (Defs.' Moving Br., Stamos Dep. Tr. 79:23-81:1.) When pressed on who told him this information, Stamos responded, "I just saw it. That's proof [sic] what they did to me." (*Id.*) And Stamos also claims that new car salespeople, Abe Levy and Steve Cotter, were replaced with "nonexperienced younger people and a lot less in salary." (*Id.* at 81:2-81:9.) Stamos could not, however, objectively account for the level of job performance or definitively provide the ages of these other individuals and their replacements. (*Id.* at 81:2-83:25.) To be sure, there is no dispute that Stamos was replaced with two younger employees; Defendants hired Johan Emanuel when he was in his forties, and Diego Baez when he was in his late twenties or thirties. (Pl.'s Opp'n Br., Ortiz Dep. Tr. 16:2-12, 18:3-8, ECF No. 32-5; Pl.'s Opp'n Br., Solano Dep. Tr. 30:3-10, ECF No. 32-4.) But Stamos acknowledges that he doesn't "have any other facts" to support his claim that the reason for his termination was his age. (Defs.' Moving Br., Stamos Dep. Tr. 84:1-85:1, 23.) Pointing to a former company's hiring of younger employees alone falls short of raising a triable dispute of fact on age discrimination. *See Hassell v. Johnson & Johnson*, No. 13-4109, 2014 WL 1744266, at *5 (D.N.J. May 1, 2014) (explaining that "merely stating that the positions went to 'primarily younger'

employees" is asking the Court to take a conclusory statement and draw an inference that [d]efendant's hiring decision was discriminatory"). Thus, Stamos fails to show pretext.[5]

Because Stamos has not shown either that Defendants' proffered justifications are unworthy of credence or that the real reason for the termination decision was discrimination, Plaintiff's age discrimination claims under the ADEA and NJLAD fail. *See Torre*, 42 F.3d at 832. The Court therefore grants Defendants' motion for summary judgment against AoP as to both Counts.[6]

---

[5] Even making all inferences in Stamos's favor, a plaintiff's "mere speculation as to why [he] was terminated does not constitute personal knowledge" and his "sworn statements and deposition testimony setting forth [his] personal beliefs do not qualify as 'competent evidence' that may create genuine [disputes] of material fact precluding the grant of summary judgment to defendant." *Patikowski v. St. Peter's Univ. Hosp.*, No. A-5386-18, 2021 WL 806943, at *8 (N.J. Super. Ct. App. Div. Mar. 3, 2021). And even if AoP was terminating older workers to reduce its salary expense, such an action, for better or for worse, is not violative of the law. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-13 (1993) ("When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is."); *Thomasian v. N.J. Inst. of Tech.*, No. 08-2218, 2010 WL 1032653, at *5-7 (D.N.J. Mar. 16, 2010) (explaining that "even if a university hired younger faculty in order to pay lower salaries and thus save money, that does not raise an inference of age discrimination under the federal age discrimination act"); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1396, 1404 (D.N.J. 1996) (firing an employee because of his high salary does not state a cause of action under the ADEA). Nor is it lost on the Court that Stamos was hired at age 57 and terminated at age 60, and Solano was approximately the same age as Stamos when he fired him. (PRSUMF ¶¶ 5, 87, 88.) "In cases such as this, where the [p]laintiff was both hired and fired while a member of the protected class of people over age 40, there is a presumption against age discrimination as a motivating factor for termination." *Thomasian*, 2010 WL 1032653, at *5. The presumption is furthered when the individuals responsible for the firing are also in the protected class. *Id.* (internal citation omitted).

[6] Even assuming Stamos has properly pled an aiding and abetting claim against Solano in his individual capacity under the NJLAD, as a result of this Court's decision, the Court dismisses such a claim as well. Generally, only an "employer" may violate the NJLAD, and "an individual supervisor is not defined as an 'employer' under the [NJ]LAD." *Tarr v. Ciasulli*, 853 A.2d 921, 928 (N.J. 2004); *Galman v. Sysco Food Servs. of Metro N.Y. LLC*, 674 F. App'x 211, 214 n.2 (3d Cir. 2016) ("[S]ince no violation of the NJLAD occurred, this claim must fail because there is no one to aid or abet." (citing *Tarr*, 853 A.2d at 929)).

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE